Th. Gaylord et al. *vs.* Cramer & Watson, H. Probasco et al.

In Special Term—SPENCER, J. presiding.

THOMAS GAYLORD et al., plaintiffs.

*vs.*

CRAMER & WATSON, HENRY PROBASCO et al., defendants.

C. & W., merchants in insolvent circumstances, with a view to prefer certain creditors, conveyed by a bill of sale to P., one of their creditors, all their *stock in trade*, household furniture, and property of every description, in consideration of $4,500, to be paid certain creditors, and the proceeds resulting from the residue of the property, to be paid, *pro rata*, to other creditors as far as the same should go; Held, that an equal trust was created for all creditors.

And the trust, thus created and accepted, cannot be changed afterwards by any act or agreement of the parties.

*Semble*, that a conveyance to P., under the same circumstances and for the same object at the fixed price of $10,000, creates P. a trustee of the purchase money, for all the creditors.

SPENCER, J.

The petition in this case is filed by the plaintiffs, in behalf of themselves and other creditors of Cramer & Watson, alleging that on the 4th day of October 1854, Cramer & Watson, merchants in Cincinnati, being utterly insolvent, and in contemplation of such insolvency, made a conveyance of all their property and effects whatsoever, real and personal, and household furniture, to the defendant Probasco, in trust, and for the purpose of preferring certain creditors of said Cramer & Watson, to the exclusion of others, among the latter of whom are the plaintiffs. It avers that Probasco intends to carry out the conveyance according to its terms; the effect of which will be to defraud the petitioners and other creditors; and it therefore asks for an injunction; and that the defendant Probasco be decreed to hold in trust for all the creditors alike, and for an equitable distribution of the fund.

The answers of the defendants admit their knowledge of Cramer & Watson's insolvency, but insist that the sale referred to in the petition, was *absolute*, (not in *trust*,) and in accordance with the purposes expressed in the bill of sale itself, which is annexed. The bill purports to convey

47

certain leasehold premises, known as Cramer & Watson's
Hall; also, "all the goods, chattels, *household furniture,
any and everywhere* belonging to us;" also, "all our in-
terest of every nature whatsoever, in all debts now due,
or to become due to us;" "to have and to hold the same
to said Probasco forever." The consideration expressed
in the bill of sale, is $4,450.33, cash in hand paid, and
further payment of sundry sums to divers persons and
firms, (some sixteen in all,) amounting to $6,345. No
estimate appears to have been made of the *lease*, or of the
*household furniture*; no schedule of property accompanies
the bill; nor does it seem that any inventory or account
was taken of the stock, at the time of sale, or before;
nor indeed, since; except that there is now annexed to
the answer of Probasco a statement of *debts* due the firm,
amounting to $4,737.33; a general estimate of stock at
$8,595; and one item of "stove patterns, flasks," &c. at
$800 : making in all $14,130.32.

Probasco himself testifies, that the sum of $4,450.33,
called "cash in hand paid," in the bill of sale, was not in
fact money paid by him to Cramer & Watson, but was
an aggregate of sums to be paid to sundry individuals, their
creditors. It appears from other testimony in the case,
that Probasco is one of the firm of Tyler Davidson & Co.,
whose debt was in part provided for by the bill of sale;
that the sum total of the debts of Cramer & Watson, as
known to all the parties to the instrument, was nearly
$40,000; that a large number of the creditors were wholly
unprovided for; whilst as to those who were provided for,
the sums set apart to each were not in proportion to the
amounts severally due them; that at, or about the time
when this alleged sale was about being consummated, the

creditors who were interested in having it completed, were admitted freely to the premises, where the matter was going on, while those who were to receive little or nothing from the sale, were either wholly excluded, or admitted with reluctance. Two of the favored creditors were witnesses to the bill of sale; and appear, therefore, to have been well satisfied with it. In addition to this, Probasco expressly disclaims any expectation of individual profit from the transaction; his whole desire being to secure as much as he could for Tyler Davidson & Co.

If the case presented nothing further, it would be difficult to resist the conclusion that this transaction was not intended by any of the parties, as a purchase and sale of goods, in the course of trade, for purposes of gain on either side; but was in fact an arrangement on all sides, under *color of a sale*, by which the property of Cramer & Watson was to be distributed in certain unequal proportions among part of their creditors, leaving the residue to their fate; of which distribution Probasco was the mere conduit pipe. For it is to be observed, that not a dollar of the alleged purchase money was to be paid to Cramer & Watson individually; but the whole consideration was to be apportioned among their creditors. In this view of the case, Probasco is clearly a *trustee* for that portion of the creditors to whom payment was to be made. Whether the sale being regarded as colorable merely, he should be treated as a trustee of the property itself; or being regarded as valid, he should be taken as trustee of the purchase money only, is perhaps unnecessary now to decide. It might be considered either way, as should be most advantageous to the creditors.

That Probasco was a trustee of the *purchase money,*

there seems hardly any room for doubt. The property was conveyed to him, expressly to *hold the proceeds*, and pay them over in certain proportions, to particular creditors. The duty thus created, was a trust, in the performance of which both parties, *debtors* and *creditors*, had an interest, and which *both*, or either, might compel him to discharge; a trust which the *debtors* could not revoke at their option. So far, therefore, as the assignment of this purchase money is concerned, it stands upon the same footing as if it had been a conveyance of the property itself, for the purpose of making the same payment among the creditors preferred; and falls directly within the purview of the Act in relation to Voluntary Assignments, passed March 14th, 1853, which provides, " That all as-" signments of property in trust, which shall be made by " debtors to trustees in contemplation of insolvency, with " the design to prefer one or more creditors to the exclu-" sion of others, shall be held to enure to the benefit of " all the creditors, in proportion to their respective de-" mands ; and such trust shall be subject to the control of " the Courts," &c. 3 *Curwen* 2239.

But it is not considered necessary to pursue this view of the subject further, since, however the matter might have been regarded, had nothing further transpired than as above stated, the transactions between the parties, which took place at a prior time during the same day, must fix and determine the character of the proceeding, and the rights of the parties under it.

It appears, then, from the whole evidence, that Cramer & Watson being utterly insolvent, to avoid pressure from their creditors, and desirous of preferring certain *confidential* debts, on the morning of the 4th of October last,

met certain of their creditors, at their own store, and thereupon, an assignment or conveyance was drawn up by the defendant, Probasco, signed by Cramer & Watson, and witnessed by two witnesses, purporting to convey to Probasco, in consideration of $4,500, and the payment of certain creditors of Cramer & Watson, *pro rata*, all the property mentioned in the bill of sale before referred to. By the terms of this conveyance, " the entire proceeds of the property were to go to Cramer & Watson's creditors," in the following manner: 1st. The *cash* to be applied toward the payment of their borrowed money in full. 2nd. The debts of the house, contracted since the 1st of May last, were to be paid to the amount of 75 per cent., should the proceeds of the property go so far, if not, then *pro rata*. 3d. The surplus, if any, was to be apportioned among the remaining debts.

This conveyance or assignment was delivered to Probasco, and upon the receipt of it, he gave his own obligation to Cramer & Watson, for the payment of the $4500, and took possession of the property. All this occurred during the forenoon of the day. When called upon afterwards by Howell and Dorr, who represented two of the creditors, Probasco told them that the conveyance was completed, as above stated; that the instrument was signed, sealed, and delivered, and that he had taken possession of the property under it—that the goods, &c., were his. This was about the middle of the day. Shortly before this, Dorr called at the store of Cramer & Watson, and was told by Cramer that the thing was all completed, and Probasco was the owner of the property. Afterward, at what time of the day does not appear, Probasco submitted the instrument to his attorneys, for examination,

and, in consequence of advice received from the latter, the instrument was destroyed, and the one first above spoken of, substituted.　There is no doubt, from the testimony, that the conveyance, first in point of time, was regarded as consummated by the parties, when executed, and not as *conditional*, to take effect upon approval by Probasco's attorneys.　Had the latter been the case, Probasco would have so stated in his affidavit in the cause. He would have so stated, when inquired of by Howell and Dorr, and not represented the transaction as finished, and possession of the property taken by him.　Nor would he have given his obligation for the cash payment of $4500, (as stated by himself,) to Cramer & Watson.

Now, this assignment was directly within the *letter*, as well as within the *spirit* of the Act relating to Voluntary Assignments.　It was a conveyance by insolvent debtors, in contemplation of their insolvency, to a trustee, with the design of preferring certain creditors to the exclusion of others, and therefore, by the express provision of the statute, it created an *equal trust* for all.　The trust thus created and accepted, could not be changed afterwards by any act or agreement of the parties.　Scull *vs.* Reeves, 2 *Green Chan. Rep.* 84 ; Cunningham *vs.* Fraber, 11 *Wendell* 241.　And the attempt to do so, in the present case, by the destruction of the instrument, and the substitution of another, was wholly nugatory.

In any aspect of the case, therefore, we are of opinion that Probasco holds the property specified in these several bills of sale in trust for all the creditors of Cramer & Watson, alike, and must account therefor accordingly.

KING, ANDERSON, and SAGE, attorneys for plaintiffs.

JONES & WARE, for defendants.